UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Nos. 6:13-CR-20-GFVT-HAI-11 & |
| v. ) | 6:19-CR-65-GFVT-HAI-8 |
| ) | |
| JERRY WAYNE WHITE, ) | RECOMMENDED DISPOSITION |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove, the undersigned considers reported supervised release violations by Defendant Jerry Wayne White. Defendant has recently been on supervised release in two separate cases. His release has already been revoked three times, plus there was a no-action 12A report last year. Details about his prior revocation conduct can be seen in the original case (6:13-CR-20-GFVT-11), as follows:

(1)   The 2017 revocation: D.E. 1100, 1105, 1108 (R&R, order, and judgment).

(2)   The 2018 revocation: D.E. 1188, 1203, 1204 (R&R, allocution hearing minutes, and judgment).

(3)   The 2019 revocation: D.E. 1334, 1344, 1346 (R&R, order, and judgment).

(4)   The 2024 12A report: D.E. 1483.

Additionally, the conduct underlying the 2019 revocation also led to Defendant's indictment (via the February 27, 2020 Superseding Indictment) for meth trafficking in case 6:19-CR-65-GFVT-8.

## I. Background

In the original case, Defendant pleaded guilty to manufacturing fifty grams or more of a mixture containing methamphetamine. He was sentenced to sixty months' imprisonment, followed by five years of supervised release. He was first released on July 8, 2016.

### A. First Revocation

On December 15, 2016, the United States Probation Office ("USPO") reported that Defendant failed to: (1) report to the probation office as directed on December 5, 2016; (2) reside at the reported residence; (3) permit the officer to visit him at any time; (4) attend substance abuse treatment; and (5) truthfully disclose his address and employment on his Monthly Supervision Report ("MSR") in violation of 18 U.S.C. § 1001. *Id*. at 3-4. The Court previously described the series of events underlying these charges:

> Upon release from incarceration, Defendant reported that he was residing with his mother on Brimm Road in Williamsburg, Kentucky. On October 31, 2016, the USPO was notified that Defendant failed to attend his scheduled substance abuse treatment at Cumberland River Comprehensive Care Center ("Cumberland River"). On November 1, 2016, USPO Greiwe contacted Defendant's mother via telephone in order to ascertain Defendant's whereabouts and discuss his absence at his scheduled substance abuse treatment appointment. His mother indicated that she had not seen or spoken to Defendant since October 25, 2016, and that he had not worked since October 14, 2016. Officer Greiwe asked Defendant's mother to have Defendant contact the USPO immediately.
>
> On November 9, 2016, USPO Greiwe visited Defendant's mother's residence in an attempt to contact the Defendant. She reported that Defendant had not stayed at her residence since October 16, but that he was driving a 2006 Nissan Altima and was believed to be staying at a residence on Whetstone Road in Williamsburg, Kentucky. She was again directed to have Defendant contact the USPO immediately. Defendant never contacted the USPO. Accordingly, the USPO attempted to contact Defendant by voice calls and text messages to the number listed on Defendant's monthly supervision report for the month of October ("October MSR") on November 9, 10, 18 and 29, 2016, but no return contact was ever received. The October MSR was hand-delivered to the USPO sometime during the week of November 7 through 11, and was signed by Defendant, but was left unattended in the USPO lobby.

      The October MSR indicated that Defendant was scheduled to begin work at TCO, LLC, in Corbin, Kentucky, through The Job Shop on November 14, 2016. On November 22, 2016, USPO Greiwe contacted TCO to inquire whether Defendant had begun working there as scheduled, but TCO staff indicated that Jerry White was not employed there. On this day, USPO Greiwe also contacted The Job Shop, whose records indicated that Defendant was last employed by Jones Plastic from August 26 until October 20, 2016.

      On November 28, 2016, USPO Greiwe attempted to visit Defendant at the Whetstone Road address where he was believed to be residing; however, the Defendant was not present at the residence. On November 29, 2016, the USPO contacted Cumberland River to determine whether Defendant had missed any further scheduled treatment sessions. Cumberland River staff indicated that there had been no contact with Defendant since before his missed appointment on October 31, 2016. USPO Greiwe also attempted to make contact with Defendant on this day at his reported residence on Brimm Road, and a door hanger was left in the mailbox directing him to report to the USPO on December 5, 2016. USPO Greiwe spoke to Defendant's sister and mother via telephone. Defendant's mother reported that Defendant had not been living at her residence, as reported, since October 2016, and he did not associate with the family over the Thanksgiving holiday. Defendant failed to report to the USPO as directed on December 5, 2016.

Defendant admitted all five violations. He was sentenced to an eight-month revocation term, followed by supervision until the original expiration date of July 7, 2021. The first three months of Defendant's supervised release were to be served in a halfway house. D.E. 1105; 1108.

Defendant was released again on October 12, 2017. Defendant successfully completed the three-month halfway house program and outpatient substance abuse treatment on January 12, 2018.

### B. Second Revocation

On February 9, 2018, the USPO issued a Second Report charging three violations, namely that Defendant failed to: (1) report to the probation office as instructed; (2) notify his probation officer of a change in address or living arrangements; and (3) permit the probation officer to visit him at any time. Again, Officer Greiwe had difficulty locating Defendant, as he was not at his reported address, and Defendant was not answering calls or responding to texts.

3

A July 9, 2018 Addendum charged three additional violations stemming from Defendant's arrest in Jellico, Tennessee. The violations alleged that Defendant violated the conditions prohibiting: (1) committing another federal, state, or local crime; (2) unlawfully possessing a controlled substance; and (3) knowingly leaving the Eastern District of Kentucky without prior permission by the court or the USPO. According to that Addendum, Defendant was charged with two counts of possession of a schedule-II controlled substance, in violation of Tennessee Code § 39-17-418, and one count of possession of drug paraphernalia, in violation of Tennessee Code § 39-17-425, after a traffic stop uncovered methamphetamine, an unknown schedule II controlled substance, and a glass pipe in Defendant's vehicle. Both offenses were Class A misdemeanors under Tennessee law. On May 24, 2018, Defendant pleaded guilty to one count of possession of a schedule-II controlled substance, methamphetamine, in Campbell County General Sessions Court. He received a sentence of thirty days of imprisonment plus eleven months and twenty-nine days of probation.

Back in this Court, Defendant admitted guilt to all six violations. The undersigned recommended a revocation sentence of fourteen months, with two years of supervision to follow. Following an allocution hearing, Judge Van Tatenhove imposed ten months of imprisonment, followed by two years of supervision, with the first six months at a halfway house.

Defendant was released again on April 19, 2019, and was placed at Dismas Charities in Manchester, Kentucky.

### C. Third Revocation

On June 26, 2019, the USPO charged Defendant with two violations stemming from his termination from Dismas Charities on June 26, 2019, when suboxone was found in his locker. At his initial appearance on the alleged violations on July 15, 2019, the United States made an oral

4

motion to dismiss the violations, without prejudice, which was granted. A status conference was scheduled for September 16, 2019, to assess Defendant's progress. At the hearing, the government moved to dismiss the violations in the June 26, 2019 report with prejudice, and that request was granted.

But then, on September 24, 2019, the USPO issued another Violation Report. It charged unlawful use of a controlled substance, knowing possession of a controlled substance, and committing the crime of methamphetamine possession. According to that Report, following the September 16 status conference, Defendant submitted a urine specimen that was positive for methamphetamine.

On October 15, 2019, the USPO issued an Addendum that charged two additional violations—for committing a crime and for associating with a felon. According to the 2019 Addendum:

> On October 8, 2019, the defendant was arrested by officials from the Williamsburg, Kentucky, Police Department (WPD) pursuant to the warrant issued by this Court for a violation of his supervised release conditions. This officer spoke to arresting officials who indicated [30 grams] of suspected methamphetamine was located under a couch cushion directly under where White was [sitting]. Additionally, Larry Harville, a former [federal supervisee], was also arrested at the location. Harville was found to be in possession of suspected methamphetamine. During questioning, Harville admitted he recently drove White to a location where White purchased one ounce of methamphetamine. White subsequently provided Harville an amount of methamphetamine as payment for driving White to the location. Based on the above, there is cause to believe White distributed Methamphetamine to Larry Harville.

At the final hearing on these violation allegations, Defendant admitted all the violations except for Violation #3, which was a Grade A violation based on committing the federal crime of meth distribution. Following an evidentiary hearing, the undersigned recommended that Defendant not be found guilty of Violation #3.

Defendant's supervision was revoked. In December 2019, Judge Van Tatenhove imposed an imprisonment term of eighteen months (above the eight-to-fourteen-month Guidelines Range), followed by one year of supervised release.

### D.  Indictment in 6:19-CR-65

On February 27, 2020, the grand jury issued a Superseding Indictment that added Defendant to case 6:19-CR-65-[REW] and charged him with conspiracy to distribute meth and heroin, including, as to Defendant, fifty grams or more of a meth mixture. This conduct was related to the conduct underlying the 2019 violations. Defendant pleaded guilty to this charge. In his plea agreement, Defendant admitted that, beginning around July 6, 2019, he "was supplied ounce level quantities of methamphetamine by a co-conspirator on 3 to 4 occasions. The Defendant resold the methamphetamine in smaller quantities to end-users and middlemen in and around Whitley and Bell Counties."

In December 2020, Judge Wier imposed an effective sixty-month sentence, to begin on the date of sentencing and run concurrently with the most recent revocation sentence in the earlier case. Judge Wier additionally imposed four years of supervision upon release, to run concurrently with the supervision term in the older case.

Defendant was released again on February 14, 2024.

### E.  2024's 12A Report

On August 12, 2024, Defendant's Probation Officer submitted a Noncompliance Report. It states:

> On July 31, 2024, White submitted a urine sample for testing which returned positive results for methamphetamine via instant testing device. White denied the use of methamphetamine and the sample was sent to the laboratory for further analysis. On August 5, 2024, White contacted this officer via text message and advised he used what he believed to be ecstasy a few days prior to submitting the urine sample. He stated he consumed this substance during an intimate encounter

6

and did not realize it had been methamphetamine. On August 6, 2024, laboratory results were received showing negative results for methamphetamine.

. . . .

White's recent admission to substance use and poor decision making is a concern to this officer that he may return to criminal conduct; however, White has also displayed some positive behavior changes during this term of supervised release. During previous terms of supervised release, White did not admit to his use of illicit substances after being confronted with a positive urinalysis, he absconded supervision and did not make his whereabouts known to the probation office, and he failed to report as directed.

White has been employed since his release from custody and his employer remains supportive of him. This job has allowed him to pay his legal obligations, including making regular payments to his court ordered restitution, and start saving money. He has worked diligently to repair his relationship with his children and has an arrangement to pay his child support and arrearage. Lastly, White's willingness to admit to his violation and accept the consequences of his behavior is a marked improvement from his previous periods of supervision.

. . . . White is also attending substance abuse and mental health treatment[.]

The Officer requested that no action be taken, but stated she would have Defendant wear a sweat patch for at least eight weeks. Both district judges approved the no-action request.

**II.**

On November 13, 2024, the USPO issued, in both cases, the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report:

On November 8, 2024, White reported to the probation office and was confronted with the results of the laboratory testing for the sweat patch that was collected from White on October 9, 2024. White admitted to using methamphetamine multiple times in a one-day period sometime between October 19th through the 24th (exact date unknown). He further admitted to using methamphetamine again on November 6, 2024. He signed an admission form confirming the use of methamphetamine.

Violation #1 alleges a Grade C violation of the condition that prohibits unlawful use of a controlled substance. Violation #2 alleges a violation of the condition that prohibits commission of another federal, state, or local crime. Violation #2 is a Grade B violation because Defendant's

7

possession of methamphetamine, on account of his prior drug convictions, constitutes a Class E felony under 21 U.S.C. § 844(a). Alternatively, simple possession of methamphetamine violates K.R.S. § 218A.1415(1)(c), which is a Class D Felony.

Defendant was arrested on February 27, 2025. Judge Wier transferred the 2019 case to Judge Van Tatenhove, who referred both matters to the undersigned for a recommended disposition.

The Court conducted an initial appearance pursuant to Rule 32.1 on March 3, 2025, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the government made an oral motion for interim detention; Defendant did not argue for release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), Defendant was remanded to the custody of the United States Marshal.

Defense counsel filed in the record of the 2019 case a series of materials in support of Defendant. D.E. 535. These include letters of support from two of his care providers and from his boss.

At the final hearing on March 25, 2025, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the violations. *Id.* He admitted using methamphetamine. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report. The United States thus established Violation #1 and #2 under the standard of section 3583(e).

**III.**

To determine an appropriate sentence, the Court has evaluated the entire record, the previous revocations, the Report and accompanying documents, and Defendant's underlying judgment and sentencing materials in both cases. The Court has also considered all the 18 U.S.C.

8

§ 3553(a) factors imported into the § 3583(e) analysis. Likewise, the parties addressed the statutory factors at Defendant's final hearing.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. In the 2019 case, Defendant pleaded guilty to conspiracy to manufacture fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Class B felony. *See* 21 U.S.C. § 841(b)(1)(B)(viii); 18 U.S.C. § 3559(a)(2). Defendant's conviction in the 2013 case, for conspiracy to manufacture fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine (a lesser-included offense of Count One of the Superseding Indictment), was also a Class B felony. For a Class B felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation with respect to Violation #1 and a Grade B violation with respect to Violation #2. The Guidelines instruct the Court to consider the defendant's criminal history category at the time of the underlying conviction. Here, Defendant had a criminal history category of III in the 2013 case and a criminal history category of IV in the 2019 case. Based on the presence of a Grade B

9

violation, Defendant's sentencing range in 2013 case is eight to fourteen months, but it is twelve to eighteen months in the 2019 case. *See* U.S.S.G. § 7B1.4(a).

## IV.

At the final hearing, the parties presented a jointly recommended penalty of revocation with fourteen months of imprisonment, to be served concurrently in both cases. As to future supervision, the joint recommendation includes no further supervision in the 2013 case, but 36 months of supervision in the 2019 case. In the 2013 case, Defendant's supervision would have terminated on February 13, 2025. But his supervision in the 2019 case was set to end in February 2028. A fourteen-month revocation sentence is at the top of the Range in the 2013 case, but in the low-mid Range in the 2019 case.

As the government pointed out, Defendant has consistent problems with methamphetamine abuse. Absent this addiction, Defendant has made significant progress. His early violations involved being difficult to find and supervise, plus some dishonesty and deception. But, in more recent years, Defendant has been quick to acknowledge guilt and take responsibility.

According to the government, this is Defendant's fifth set of violation conduct while on federal supervision. And Defendant was on state supervision at the time of the original underlying crimes in 2013. Defendant completed the RDAP program, plus various other addiction-treatment programs, but the things he learned have not seemed to "click."

The government argued that a significant revocation sentence would protect the public. And it should provide deterrence against future crimes and violations. Admittedly, the prior convictions and revocations have not successfully deterred Defendant from meth use. The government still believes Defendant can benefit from treatment, which is one reason the

10

government sought additional supervision. The prosecutor warned that he would likely seek a statutory-maximum revocation sentence on any future violations.

Another reason to provide additional supervision is because Defendant's meth use has, in the past, led to distribution. Further supervision will help protect the public in that respect.

Despite the violations, the government considered Defendant to be pleasant and forthcoming. The recommended sentence took into account how he has, in recent years, swiftly admitted his violation conduct.

The defense emphasized that Defendant had been working for a construction company. His boss was aware of his supervision status, yet Defendant progressed from making $22/hour to making $30/hour. Defendant is optimistic he can return to that work. And the defense emphasized the letters of support that were filed in the record of the 2019 case.

Defendant addressed the Court. He said he agreed with the government's description and said the Court had always been more than fair. He said he was grateful for the relative leniency he had been shown, especially from his probation officer. He said he had grown some and was "processing things a bit differently" than before, which gives him hope. He said he is taking better care of his family than ever before. Meth and women have been his downfall, he said, but he intends to do better.

Neither party requested any new conditions of supervision.

## V.

Concerning the sentence, Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The

only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835. Nothing in the record supports application of the exception, and neither party argued for it.

One sentencing factor concerns the nature and circumstances of Defendant's underlying conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011). In the 2013 case, Defendant was involved in both cooking and distributing methamphetamine as part of a dangerous trafficking conspiracy. When arrested, he was in the presence of a methamphetamine lab and in possession of an explosive device. Since then, he has been revoked three times (with meth use involved), was indicted for additional meth trafficking in the 2019 case, and admitted to drug use in 2024. Now, he has again admitted using methamphetamine, despite these prior warning events and the training and treatment he has received over the last ten years. Every use of meth is illegal, involves some sort of contact with the black market, and raises the threat of a return to trafficking to support Defendant's drug addiction.

The Court next considers Defendant's history and characteristics. The parties agree Defendant has positive characteristics. He is likeable and a hard worker, and has become swift to admit wrongdoing. He is not difficult to supervise as he once was. Yet his Achilles' heel, his meth addiction, persists. Hopefully imprisonment and supervision will separate him from methamphetamine long enough for Defendant to live the rest of his life apart from illegal narcotics.

The Court also considers the need to deter criminal conduct and protect the public. Defendant has a history of crimes driven by his meth addiction, and this scenario invokes a need to protect the public and deter criminal conduct, both of which can be addressed by a significant prison term and further supervision.

Another factor focuses on opportunities for education and treatment. Defendant has availed himself of treatment opportunities in the past. He has the tools he needs to stay off drugs and to make a life for himself without trafficking again. The parties believe he can benefit from more treatment. The current release conditions provide for additional treatment, should the USPO deem it warranted.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Clearly, the breach of trust here is significant given this is Defendant fifth set of reported violation conduct. Defendant has, at times, been given lenient treatment. But he has also been indicted for revocation conduct and received an above-Range revocation sentence as well. On the bright side, the most recent violations have only indicated meth use, and not any trafficking or manufacturing activity.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. The Court finds the parties' jointly recommended penalty to be sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. See 18 U.S.C. § 3583(e).

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of both charged Violations.

2. Revocation with a term of imprisonment of fourteen months.

13

  3.  No additional supervision in case 6:13-CR-20-GFVT-11, but 36 months of supervision upon release in case 6:19-CR-65-GFVT-8, under the conditions previously imposed (D.E. 314 in 6:19-CR-65).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 27th day of March, 2025.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge